## Case No. 10,218.

### NEW YORK WIRE-RAILING CO. v. WALKER et al.

[2 Fish. Pat. Cas. 179.] [1]

Circuit Court, E. D. Pennsylvania. May, 1861.

PATENTS—CONSTRUCTION—SCOPE—WIRE FENCE.

Whether a patent for a wire fence can properly be held to include a window guard, quaere.

In equity. This was a motion for an attachment for contempt, in violating an injunction previously allowed by Mr. Justice Grier, restraining the defendants [Matthew Walker, Daniel S. Walker, and Matthew Walker, Jr.] from the infringement of letters patent for "an improvement in wire fences," granted to Henry Jenkins, February 13, 1849 [No. 6,106], and assigned to complainants.

The claim of the patent was as follows: "I claim constructing the wrought iron wire fence, substantially as herein described, that is to say, by forming the top and bottom rails and posts of the panel of grooved bars, through which the ends of the wires, of which the meshes are made, are drawn and the ends turned down into said grooves, and then covered by other similar bars to hold them in place, by which a perfect finish is effected, and the expense and difficulty of riveting is avoided."

Leonard Myers, for complainants.
George Harding, for defendants.

GRIER, Circuit Justice. Complainants filed their bill against respondents, charging an infringement of their rights under a patent granted to Henry Jenkins for a new and useful improvement in wire fences, dated February 13, 1849. In September, 1859, by order of this court, an injunction was issued "extending only to making, using, or selling to others to be used beyond the eastern counties of Pennsylvania." An application is now made for an attachment against respondents for a contempt in disobeying this injunction. The complainants allege that respondents have sold certain "window guards" to a person in Norfolk. Samples of the patented machine or improvement, and also the "window guards" supposed to have been sold, have been exhibited to the court. On inspection

---

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

of them, it requires no evidence of experts to prove that the "window guards" do not infringe the patent. The patent is for "an improved method of manufacturing wrought iron fence." The essential part of this improvement is properly described to consist in having the frame of the panel composed of double bars of wrought iron rolled into a groove; every part of such frame consisting of two such bars put together. The wires, forming the mesh work of the fence, have these ends drawn through holes in the grooved bar and turned down into the groove, and another groove bar is then put over them. By this means, the necessity of riveting the wires is obviated. The claim is for constructing the wrought iron wire fence, substantially as described, that is to say, forming the top and bottom rails and posts of the panel, of grooved bars, through which the ends of the wires are drawn and turned down and covered by other similar bars. Waiving the question of whether a "window guard" is properly within the category of a "wire fence," it is very evident that the window guards in question do not infringe the patent. They have not the double-grooved bar which constitutes the whole of the invention patented. That an iron wire could be drawn through a hole in a bar, and fastened roughly by bending it and clinching it without riveting, has been known probably since the days of Tubal Cain; and if the patent included such a claim it would be void, but such is not the claim, and the "window guards" have not the double-grooved bars, which is the only improvement made or claimed.

The motion for an attachment is, therefore, overruled, with costs.